UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TECHNOLOGY LICENSING CORPORATION,<br><br>                Plaintiff,<br>     v.<br><br>GRASS VALLEY USA, INC,<br><br>                Defendant. | Case No. 3:12-cv-06060-PSG<br><br>**ORDER GRANTING-IN-PART GRASS VALLEY'S MOTION TO STRIKE**<br><br>**(Re: Docket No. 71)** |

Before the court is Defendant Grass Valley USA, Inc.'s motion to strike and compel revised patent infringement contentions.[1] Plaintiff Technology Licensing Corporation opposes. The parties appeared for a hearing.[2] Having considered the arguments, the court GRANTS Grass Valley's motion, but only IN-PART, as explained below.

---

[1] *See* Docket No. 71 at 1.

[2] *See* Docket No. 81.

1

Case No. 3:12-cv-06060-PSG
ORDER GRANTING-IN-PART GRASS VALLEY'S MOTION TO STRIKE

# I. BACKGROUND

TLC is a Nevada-based corporation that holds the rights to the four patents in this case.[3] Grass Valley is a California-based corporation that develops video editing and recording products.[4] On November 29, 2012, TLC filed suit and claimed that approximately one hundred of Grass Valley's products infringe four TLC patents.[5] At issue in this motion are TLC's infringement contentions covering the '842[6] and '539[7] patents.

# II. LEGAL STANDARDS

Any "party claiming patent infringement" in this district must disclose (1) what claims they are asserting and (2) provide a "chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality."[8] Patent L.R. 3-1 provides a "'streamlined' mechanism to replace the 'series of interrogatories that defendants would likely have propounded' in its absence."[9] The disclosure also provides "early notice" of a plaintiff's "infringement and invalidity contentions" and requires plaintiffs to "proceed with diligence in amending those contentions when new information comes to light in the course of discovery."[10] The rules thus "balance the right to develop new information in discovery with the need for certainty as to the

---

[3] *See* Docket No. 1 at 2; Docket No. 44 at 2. TLC is asserting U.S. Patent Nos. 5,920,842, 8,072,539, RE 40,411 and RE 40,412.

[4] *See* Docket No. 19 at 1.

[5] *See* Docket No. 44 at ¶ 5; Docket No. 75-3, Ex. 1; Docket No. 75-4, Ex. 2.

[6] The '842 patent relates to synchronizing video and audio signals by modifying the audio signal, as well as correcting pitch changes that result from that modification. *See* Docket No. 75-3, Ex. 1.

[7] The '539 patent relates to digital processing of video signals and adjusting output signal timing based on either an external clock or the timing of the input video signal. *See* Docket No. 75-4, Ex. 2.

[8] Patent L.R. 3-1.

[9] *See FusionArc, Inc. v. Solidus Networks, Inc.,* Case No. 5:06-06770-RMW-RS, 2007 WL 1052900, at *2 (N.D. Cal. Apr. 5, 2007) (quoting *Network Caching Tech., LLC v. Novell Inc.,* Case No. 3:01-cv-2079-VRW, 2002 WL 32126128, at *7 (N.D. Cal. Aug. 13, 2002)).

[10] *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006).

legal theories."[11]  That balance sets a framework for discovery enabling "parties to move efficiently toward claim construction and the eventual resolution of their dispute."[12]

"These rules do not, as is sometimes misunderstood, 'require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case.'"[13]  "But a patentee must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it."[14]

### III. DISCUSSION

Grass Valley is not satisfied with TLC's contentions.  Reduced down, Grass Valley's complaint is three-fold: (1) TLC includes products that are not accused of practicing any claim limitation; (2) TLC relies generally on Grass Valley manuals and catalogs and (3) TLC's claim charts are imprecise.  The court will address each issue in turn.

---

[11] *Id.* at 1366 n.12 (citing *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006) ("The [patent local] rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.")).

[12] *FusionArc*, 2007 WL 1052900, at *2 (N.D. Cal. Apr. 5, 2007) (quoting *American Video Graphics, L.P. v. Electronic Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005)).

[13] *DCG Sys. v. Checkpoint Tech., LLC,* Case No. 5:11-cv-03729-PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (quoting *Whipstock Serv., Inc. v. Schlumberger Oilfield Sers.,* Case No. 6:09-cv-113, 2010 WL 143720, at *1 (E.D. Tex. Jan. 8, 2010)).

[14] *Id.* at *2 n.12 (citing *FusionArc*, 2007 WL 1052900 at *1 (denying motion to strike infringement contentions where "the record demonstrates that patentee FusionArc's infringement contentions reasonably disclose all of the information it presently possesses") (bracketing omitted).  Where the accused instrumentality includes computer software based upon source code made available to the patentee, the patentee must provide "pinpoint citations" to the code identifying the location of each limitation.  *See Big Baboon Corp. v. Dell, Inc.*, 723 F. Supp. 2d 1224, 1228 (C.D. Cal. 2010).  In at least one instance, this court has gone further, holding that even when no source code has been made available by the defendant, "reverse engineering or its equivalent" may be required for at least one of the accused products to identify where each limitation of each claim is located.  *Network Caching*, 2002 WL 32126128, at *5.

### A. Products That are Not Accused of Practicing Any Claim Limitation Should Be Excluded

TLC urges that Grass Valley's overall systems – comprising frames, racks, power supplies, network interface cards and one or more allegedly infringing modules – constitute the accused instrumentalities even though the asserted claim limitations are practiced at the module level.[15] Drawing upon this broad perspective, TLC's infringement contentions sweep in Grass Valley's ancillary equipment. At the same time, TLC's charts do not allege that the ancillary equipment practices any specific claim limitations. TLC instead represents that the ancillary equipment is used "in conjunction with one or more accused products."[16] Patent L.R. 3-1(c) requires the patentee to specifically match claim limitations with an accused instrumentality. The rules do not authorize the addition of accused instrumentalities that do not practice any specific claim limitations. The inclusion of ancillary products within TLC's infringement contentions is not warranted. Any accused instrumentality not tied to a specific claim limitation shall be struck.

### B. TLC's May Rely on Grass Valley's Product Manuals

TLC relies upon statements and descriptions from Grass Valley's user manuals to identify where and how TLC believes each Grass Valley product practices claim limitations.[17] Grass Valley urges that TLC's reliance is not warranted because this court requires "reverse engineering or its equivalent."[18] The case law cited, however, specifically held that reverse

---

[15] It is undisputed that the frames, racks, power supplies and network interface cards do not "themselves embody the limitations of the asserted claims." Docket No. 75 at 2.

[16] Docket No. 75-3, Ex. 1 at 17-24; Docket No. 75-4, Ex. 2. at 55, 57-59, 61.

[17] *See id.*

[18] *See Network Caching*, 2002 WL 32126128, at *5 ("while the court is reluctant to hold that in all cases such a comparison requires reverse engineering of the defendant's products, the court finds that reverse engineering or its equivalent is required" and further detail "is necessary in this case."); *see also Intertrust Tech. Corp. v. Microsoft Corp.*, Case No. 3:01-cv-1640-SBA, 2003 WL 23120174, at *2 (N.D. Cal. Dec. 1, 2003) (citing *Network Caching*, 2002 WL 32126128, at *5); *GN Resound A/S v. Callpod, Inc.*, Case No. 3:11-cv-04673-SBA, 2013 WL 1190651, at *2 (N.D. Cal. Mar. 21, 2013) (citing *Intertrust*, 2003 WL 23120174, at *2).

engineering may not be warranted in all circumstances.[19] And, as TLC points out, the rules do not require disclosure of specific evidence, nor do they require a plaintiff to prove its infringement case.[20] TLC instead must disclose information sufficient for Grass Valley to appreciate its infringement theory.[21]

At this preliminary stage, TLC need only demonstrate a reasonable chance of proving infringement.[22] TLC has laid out a reasonable basis for its assumption that all products in a family practice the same claim limitations: the product manuals themselves suggest that products within a family share similar functionality.[23] At bottom, TLC's reliance on Grass Valley manuals – while incomplete – provides sufficient notice of TLC's infringement theory across product families.[24]

---

[19] *See Network Caching*, 2002 WL 32126128, at *5 ("The court is reluctant to hold that in all cases such a comparison requires reverse engineering of defendant's products."); *supra* note 14.

[20] *See supra* note 13.

[21] *See id.*

> These rules do not, as is sometimes misunderstood, 'require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case.' But a patentee must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is available to it. (internal citations omitted).

[22] *See Shared Memory Graphics*, Case No. 3:10-cv-02475-MMC-JSC, 2011 WL 3878388, at *4 (All "courts agree that the specificity under Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement'") (quoting *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)).

[23] *See, e.g.*, Docket No. 75-5, Ex. 3 at 7.

[24] TLC also relies on Grass Valley manuals for certain claim limitations in several modules that are not explicitly described in the manuals. The manuals obliquely describe the features of specified products "as part of" of a larger product family. Because infringement contentions are primarily concerned with notice, TLC may rely on Grass Valley's own disclosure of product family features. *Cf. Implicit Networks Inc. v. Hewlett-Packard Co.*, Case No. 3:10-cv-3476-SI, 2011 WL 3954809, at *2 (N.D. Cal. Sept. 7, 2011).

> The Court, however, finds Implicit's amended claim chart for the Data Flow Patents sufficient. For the Data Flow Patents—which appear to cover a broadly defined process of data flow management—Implicit has provided charts which identify for each category of products at issue how exactly Implicit believes HP's group of products infringes on each claim. Each time Implicit accuses a specific group of HP products of infringing an element of a claim, HP provides a narrative explanation of how the product group infringes and supports that narrative with citations to HP manuals and other HP documentation for

United States District Court
For the Northern District of California

Case 5:12-cv-06060-PSG   Document 85   Filed 07/30/14   Page 6 of 7

### C. TLC's Claim Charts Are Insufficient, But Only In-Part

The claims of the '842 patent describe how to synchronize two signals that are delayed relative to one another by adjusting one of the signals to match the other.[25] TLC largely supports its infringement contentions for the '842 patent by reference to a functional diagram from a Grass Valley product manual.[26] The diagram shows the paths by which audio and video signals are processed within the allegedly infringing module.[27] The diagram includes blocks labeled "Temporal Conversion" and "Audio Delay Fixed and Adjustable."[28] TLC also refers to a Grass Valley product manual that describes synchronized video output.[29] TLC's use of available Grass Valley publications explains its infringement position within the accused modules with respect to each claim limitation.[30] In sum, TLC has provided sufficient notice of its reasonable basis for asserting Grass Valley's infringement of the '842 patent in compliance with the local rules.

---

specific products within that group. Taken together, Implicit's chart adequately explains Implicit's theory of how the HP products infringe claims within the process covered by the Data Flow Patents, and identifies where in the accused product the infringement occurs. (internal record citations omitted).

*See also DCG Sys.*, 2012 WL 1309161, at *1 (granting motion to amend invalidity contentions based upon newly-available information gleaned from product manuals).

[25] *See* U.S. Patent No. 5,920,842 at 27:66-28:12.

> A method of synchronizing a signal having frequency related information timed relative to a first time reference to a second signal on an associated channel timed relative to the same time reference which first signal may or may not be synchronized to the second signal at any point in actual time, the first signal having an alpha length; said method comprising determining the time differential between the first signal and the second signal on the associated channel and then altering the alpha length of the first signal in response to time differential to compensate for the delay which may vary of the second signal.

[26] *See* Docket No. 75-3, Ex. 1; Docket No. 75-5, Ex. 3 at 36.

[27] *See* Docket No. 75-5, Ex. 3 at 36.

[28] *See id.*

[29] *See* Docket No. 75-3, Ex. 1 at 2.

[30] *See id.*

Case No. 3:12-cv-06060-PSG
ORDER GRANTING-IN-PART GRASS VALLEY'S MOTION TO STRIKE

TLC's contentions for the '539 patent also reference Grass Valley product manuals.[31]  But in a few key areas, the '539 contentions fall short.  TLC refers to components or functionalities that embody claim limitations but are absent from the manuals: for example, (1) clamping an input video signal to an established direct current level, (2) generating a sampling clock for analog-to-digital conversion, (3) use of a digital-to-analog converter with a frame rate determined by an output clock, (4) processing interpolated samples for analog-to-digital video conversion and (5) providing interpolated samples at a rate slower than the sampling clock rate for oversampling.[32] Instead of detailing where these components or functionalities are located, TLC responds that the components or functionalities necessarily must be present.[33]  A bare statement that some functionality is necessarily present is insufficient to describe the "structure(s), act(s), or material(s) in the Accused Instrumentality" performing the claimed function.[34]  TLC's contentions therefore shall be amended to explain why these limitations are necessarily present and where these limitations are practiced in the accused instrumentalities.

Because TLC's contentions are insufficient, amendment is necessary.  Any amended contentions shall be served within 14 days.

**IT IS SO ORDERED.**

Dated: July 30, 2014

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[31] See Docket No. 75-3, Ex. 2.

[32] See id. at 2-3, 6, 12, 17, 20, 22, 27, 30, 32, 39.

[33] See id.  The contentions do not reference the manuals or provide alternative record support that such components and functionalities are necessary.

[34] Patent L.R. 3-1(c).

7
Case No. 3:12-cv-06060-PSG
ORDER GRANTING-IN-PART GRASS VALLEY'S MOTION TO STRIKE